No. 93-430

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

FILED

NOV 29 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

JOHN BABCOCK,

       Plaintiff and Appellant,

  v.

LISA LYNN WONNACOTT,

       Defendant and Respondent.

---

APPEAL FROM:  District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Daniel R. Sweeney, Attorney at Law,
          Butte, Montana

      For Respondent:

          Lisa Lynn Wonnacott, Pro Se,
          Butte, Montana

---

Submitted on Briefs:  September 1, 1994

Decided:  November 29, 1994

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant John Babcock appeals from an order of the Second Judicial District Court, Silver Bow County, granting temporary custody of his minor child, B.B., to a maternal great aunt.

Reversed and remanded.

We state the issue as follows:

Did the District Court err in granting temporary custody of a minor child to a maternal great aunt during a modification of custody proceeding between the biological mother who had been granted physical and legal custody of the child at dissolution, but who, at the time of the hearing, was in the Montana State Prison, and the biological father who was granted visitation rights by the court in the dissolution, and who now had custody of the child?

On October 31, 1991, B.B. was born to appellant John Babcock and respondent Lisa Wonnocott, an unmarried couple living together. After the couple separated, appellant filed a motion to establish paternity and to request temporary custody. On April 15, 1992, the court entered an order establishing appellant as the natural father of B.B. The court granted respondent legal and physical custody of B.B., with visitation rights granted to appellant.

In June 1993, respondent was convicted of felony forgery and sentenced to a term of five years, with one year suspended, to be served at the Women's Correctional Facility in Warm Springs. The Montana Department of Social and Rehabilitation Services had custody of the child and turned that custody over to appellant. In an effort to gain permanent custody of B.B., appellant filed a

2

motion on July 12, 1993, to modify the April 15, 1992, order which granted respondent full custody of B.B. The court ordered respondent to show cause why appellant's motion to modify should not be granted. A hearing on the show cause order was held on August 6, 1993. In addition to other witnesses, B.B.'s maternal great aunt gave testimony concerning her employment, the number of bedrooms in her home, her relationship with B.B., her perceptions of B.B.'s physical and emotional condition, her relationship with appellant, her care of B.B.'s half-brother, and her willingness to assume temporary custody of B.B.

On August 12, 1993, the court issued its findings of fact, conclusions of law, and order. The court found that it was in the best interest of B.B. that he remain in the legal custody of respondent, but placed in the temporary custody of his great aunt. The court concluded that the environment provided for B.B. by appellant seriously endangered B.B.'s emotional health. The court then ordered that B.B. be placed in the temporary custody of his great aunt while respondent served the remainder of her sentence. Appellant was granted week-day visitation rights to allow B.B. to visit respondent on weekends. Appellant appeals the court's order.

Did the District Court err in granting temporary custody of a minor child to a maternal great aunt during a modification of custody proceeding between the biological mother who had been granted physical and legal custody of the child at dissolution, but who, at the time of the hearing, was in the Montana State Prison,

3

and the biological father who was granted visitation rights by the court in the dissolution, and who now had custody of the child?

This Court will review a district court's conclusions of law to determine whether the district court's interpretation of the law was correct. In re Marriage of Schara (Mont. 1994), 878 P.2d 908, 910, 51 St. Rep. 676, 677; In re Marriage of Barnard (1994), 264 Mont. 103, 106, 870 P.2d 91, 93 (citing In re Marriage of Burris (1993), 258 Mont. 265, 269, 852 P.2d 616, 619).

Respondent is unable to care for B.B. during her incarceration, therefore, appellant is entitled to custody under § 40-6-221, MCA, which provides that:

> The father and mother of an unmarried minor child are equally entitled to the custody, services, and earnings of the child. If either parent be dead or unable or refuses to take the custody or has abandoned his or her family, the other is entitled to the custody . . . of the child . . . .

We have held that the right of a parent to custody of his or her child is a fundamental, constitutional right. In re Guardianship of Aschenbrenner (1979), 182 Mont. 540, 544, 597 P.2d 1156, 1160; Matter of Guardianship of Doney (1977), 174 Mont. 282, 288, 570 P.2d 575, 577. This constitutionally protected right is not weakened by the fact that a child is born out of wedlock. Matter of M.G.M. (1982), 201 Mont. 400, 406, 654 P.2d 994, 998. The district court is powerless to deprive a natural parent of custody of a minor child because it determines that a non-parent enjoys more financial resources or leads a more preferable life-style than does the parent. Doney, 570 P.2d at 576. Any showing

4

that the great aunt might have been able to provide a better environment for B.B. was irrelevant to the question of custody, as between appellant and respondent, in view of the statutory and constitutional rights of a parent to custody.

It has long been the law in Montana that where a third party seeks custody to the exclusion of a natural parent, the right of the natural parent prevails until a showing of forfeiture of that right. Aschenbrenner, 597 P.2d at 1162-63 (citing Henderson v. Henderson (1977), 174 Mont. 1, 10, 568 P.2d 177, 181-82); Matter of Fisher (1976), 169 Mont. 254, 259, 545 P.2d 654, 657. "[A]bsent a finding of abuse or neglect based on clear and convincing evidence, parental rights may not be terminated." M.G.M., 654 P.2d at 997; Doney, 570 P.2d at 577; In re Matter of J.L.B. (1979), 182 Mont. 100, 109, 594 P.2d 1127, 1131. A finding of abuse, neglect, or dependency is the jurisdictional prerequisite for any court-ordered transfer of custody from a natural parent to a third party. M.G.M., 654 P.2d at 998; In re Gore (1977), 174 Mont. 321, 327, 570 P.2d 1110, 1113. Abuse, neglect, and dependency are defined by § 41-3-102, MCA, which provides in pertinent part that:

> (2) "Abused or neglected" means the state or condition of a child who has suffered child abuse or neglect.
> . . . .
> (5) (a) "Child abuse or neglect" means:
> (i) harm to a child's health or welfare, as defined in subsection (8); or
> (ii) threatened harm to a child's health or welfare, as defined in subsection (15).
> (b) The term includes harm or threatened harm to a child's health or welfare by the acts or omissions of a person responsible for the child's welfare.
> . . . .

5

(7) "Dependent youth" means a youth:

(a) who is abandoned;

(b) who is without parents or guardian or not under the care and supervision of a suitable adult;

(c) who has no proper guidance to provide for necessary physical, moral, and emotional well-being;

(d) who is destitute;

(e) who is dependent upon the public for support; or

(f) whose parent or parents have voluntarily relinquished custody and whose legal custody has been transferred to a licensed agency.

(8) "Harm to a child's health or welfare" means the harm that occurs whenever the parent or other person responsible for the child's welfare:

(a) inflicts or allows to be inflicted upon the child physical or mental injury;

(b) commits or allows to be committed sexual abuse or exploitation of the child;

(c) causes failure to thrive or otherwise fails to supply the child with adequate food or fails to supply clothing, shelter, education, or adequate health care, though financially able to do so or offered financial or other reasonable means to do so;

(d) abandons the child by leaving the child under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or by willfully surrendering physical custody for a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child; or

(e) is unknown and has been unknown for a period of 90 days and reasonable efforts to identify and locate the parents have failed.

. . . .

(15) "Threatened harm to a child's health or welfare" means substantial risk of harm to the child's health or welfare.

The Legislature has established the procedure under § 41-3-401, MCA, which the State must follow, and the findings the court must make, before custody of a child may be taken from a natural parent. For example, the county attorney did not file a petition alleging abuse, neglect, or dependency as required by

6

§ 41-3-401(1), MCA. As a result, there was no petition alleging abuse, neglect, or dependency as required by § 41-3-401(9)(a), MCA, and appellant was not served with a copy of the petition under § 41-3-401(4), MCA. Finally, no citation was served on the Department of Family Services prior to the hearing, as required by § 41-3-401(8), MCA.

Considerable testimony and evidence was offered challenging appellant's parenting skills while establishing the great aunt's ability to provide adequate care for B.B. In response, the court based its findings and conclusions on a "best interest of the child" analysis. The District Court concluded that the best interest of B.B. was served by allowing respondent to retain custody and by granting temporary custody to the great aunt. However, the "best interest of the child" analysis should only be used after a showing of dependency, abuse, or neglect by the natural parent pursuant to § 41-3-102, MCA, or during a custody dispute between two natural parents. By relying on a "best interest of the child" analysis, the court did not meet the jurisdictional and procedural prerequisites for depriving appellant custody of B.B. in favor of the great aunt. Without meeting these prerequisites, the District Court had no jurisdiction to deprive appellant of custody. Aschenbrenner, 597 P.2d at 1162; Doney, 570 P.2d at 578.

After reviewing the record, we conclude that the District Court's interpretation of the law was incorrect, and that the award

7

of temporary custody to the great aunt was improper and must be reversed.

We hold that the District Court erred in granting temporary custody of the minor child, B.B., to a maternal great aunt during a modification of custody proceeding between the biological parents of the minor child.

Reversed and remanded for further proceedings in accordance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

8

Justice Karla M. Gray specially concurring.

I concur in the Court's opinion. It is my view, however, that additional clarification is necessary to prevent confusion in this important area of child custody.

The Court is careful to state that this case involves a child custody modification proceeding between the biological mother and the biological father. This case does not involve a proceeding in which the child's maternal great-aunt sought legal custody of the child. Notwithstanding the nature of the proceeding before it, the District Court granted temporary custody of the child to the great-aunt. The Court holds, and I agree, that the District Court erred in doing so.

In reaching its decision, the Court correctly states that under circumstances and statutes not before us here involving an abused, neglected or dependent child, custody might be granted to a nonparent. It does not address any other circumstances in which custody might be granted to a nonparent.

We held in In re Custody of R.R.K. (1993), 260 Mont. 191, 859 P.2d 998, that a nonparent could seek custody of a child pursuant to the provisions contained in § 40-4-211(4)(b), MCA. I specially concur here only to express my understanding that the Court's failure to mention this alternative basis through which nonparents properly might be granted custody--which, like the situation involving an abused, neglected or dependent child, also is not before us--is not in any way a negation of our decision in In re Custody of R.R.K.

Justice

9

November 29, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

DANIEL R. SWEENEY
Attorney at Law
P.O. Box 3725
Butte, MT 59701

Lisa Lynn Wonnacott
25 E. Granite
Butte, MT 59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy