No. 95-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE MARRIAGE OF

PATRICIA ANN ROBERTS,

      Petitioner and Respondent,

  and

DAVID ROBERTS,

      Respondent and Appellant.



APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Mark D. Parker, Parker Law Firm,
          Billings, Montana

      For Respondent:

          Allen Beck, Attorney at Law,
          Billings, Montana


Submitted on Briefs: October 19, 1995

Decided: December 5, 1995

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Patricia Roberts filed a petition in the District Court for the Thirteenth Judicial District in Yellowstone County for dissolution of her marriage to David Roberts. Following a two-day hearing at which the parties presented evidence in support of and in opposition to various pre-dissolution motions, the court entered an order in which it disallowed any visitation by David until further order of the court and ordered that he not enter Melstone, Montana. David appeals from the order of the District Court.

We restate the issues on appeal as follows:

1. Did the District Court abuse its discretion when it modified the temporary visitation arrangement?

2. Did the District Court violate David's right to due process when it amended the pleadings to include David's right to visitation?

3. Did the District Court abuse its discretion when it admitted tapes of conversations recorded without David's knowledge?

4. Did the District Court violate David's constitutional right to travel when it ordered that he not enter Melstone, Montana?

2

## FACTUAL BACKGROUND

David and Patricia were married on March 13, 1958. They have eight children, three of whom are minors: Brian Keith Roberts, age 16; Raina Christina Roberts, age 11; and Kyla Ann Roberts, age 8.

On August 31, 1994, Patricia filed a petition for dissolution of her marriage to David. She filed an *ex parte* motion for a temporary restraining order and temporary injunction, and an affidavit at the same time. Patricia's affidavit stated that she fled the family home on August 25, 1994, and did not disclose her whereabouts because she feared for her life and the lives of her minor children. The affidavit stated that she was concerned because David experienced mood swings and made repeated threats to her and her adult children, which included threats of suicide, and assault, and threats to kill them.

On the same day, the court issued a temporary restraining order prohibiting David from molesting or disturbing the peace of Patricia and the minor children. It also granted temporary custody of the minor children to Patricia and set September 8, 1994, as the date on which David could show cause why further relief should not be granted.

The show cause hearing was actually held on September 12, 1994. On September 15, 1994, the parties stipulated to a temporary restraining order and other temporary relief to remain in effect until September 27, 1994.

On September 27, 1994, a second show cause hearing led to a second stipulation regarding temporary custody, visitation, child support, and maintenance. The parties agreed that Patricia would have sole custody of the minor children until further order of the court; David would have supervised visitation until further order of the court; and the parties would submit to an evaluation by a family therapist and a psychologist who would make a recommendation regarding appropriate visitation. The stipulation also enjoined David from molesting or disturbing the peace of the petitioner and the minor children and Patricia from doing the same to David. The stipulation also forbade David from having any contact with Patricia or the minor children at Patricia's residence or any school that the minor children attend, and from removing the children from the State of Montana.

On October 24, 1994, Patricia filed another *ex parte* motion for temporary restraining order. She requested exclusion of David from the community of Melstone, Montana. She based her motion on her own affidavit and the affidavits of Sam Damon and John Emigh, whom she had hired as bodyguards. In her affidavit, Patricia noted numerous occasions on which David had violated the stipulation and order dated September 30, 1994.

On November 14, David made several motions. He moved to have Patricia held in contempt for violating the visitation order, to have the children interviewed in chambers regarding custody, to have the court seek advice from a professional person pursuant to § 40-4-214(2), MCA, for an investigation and report concerning the

4

custody of the minor children pursuant to § 40-4-215, MCA, for an order requiring family law mediation pursuant to § 40-4-301, MCA, and for the appointment of an attorney to represent the interests of the children pursuant to § 40-4-205, MCA. David's motion to have Patricia held in contempt was based on his unsuccessful efforts to exercise visitation.

On December 6 and December 7, 1994, the court held a hearing to consider evidence pertaining to the parties' motions. Following the hearing, the court issued its findings of fact, conclusions of law, and order in which it granted all of David's motions except the motion to have Patricia held in contempt and the motion for family law mediation. The court deemed the pleadings amended pursuant to Rule 15(b), M.R.Civ.P., to include the issue of temporary custody and visitation and modified the temporary custody, visitation, and restraining order dated September 30, 1994, to prohibit visitation by David until further order of the court. It also ordered that David not enter the town of Melstone, Montana.

ISSUE 1

Did the District Court abuse its discretion when it modified the temporary visitation arrangement?

We review a district court's findings of fact related to visitation modification to determine whether those findings are clearly erroneous. *In re Marriage of Elser* (Mont. 1995), 895 P.2d 619, 622, 52 St. Rep. 434, 436 (citing *Marriage of Johnson* (1994), 266 Mont.

5

158, 166, 879 P.2d 689, 694). When a district court's underlying findings are not clearly erroneous, this Court will overturn a district court's modification of visitation rights only when an abuse of discretion is clearly demonstrated. *Elser*, 895 P.2d at 622.

Section 40-4-217(3), MCA, governs modification of visitation rights and provides:

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; however, the court may not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health.

In its order, which temporarily prohibited David from visiting his minor children, the court concluded that "[v]isitation between David and the minor children would seriously endanger the physical, mental and emotional health of the children." On appeal, David contends that serious endangerment was not proven.

However, after a review of the record, we conclude that serious endangerment was proven. The District Court set forth the following facts in its order. It found that David made comments to the Deputy Sheriff, Floyd Fisher, which could be interpreted as threats to take the life of Patricia and others; that David may be a very violent and dangerous person; that Patricia had hired bodyguards to protect her because of her fear of David; and that the three adult children who testified at the trial all feared their father and thought he dealt inappropriately with them or other siblings when they were growing up.

6

A review of the record demonstrates that the court's findings were supported by substantial evidence. Specifically, Kevin Roberts, the couple's 24-year-old son, described David as a violent man and testified that he saw David place a knife to the throat of a man and then was asked by David to obtain a gun for him so he could kill the man. Christopher Roberts, the couple's 19-year-old son, testified that he had been afraid of his father for as long as he could remember. Patricia testified that David threatened to commit suicide and take the family with him and threatened to take the minor children to a foreign country. The Deputy Sheriff testified that David Roberts had threatened to "kill that bitch" when his minor children refused to visit him at a scheduled visitation time.

We conclude that the District Court's findings of fact are not clearly erroneous, and that the court did not abuse its discretion when it modified the parties' temporary visitation agreement to prohibit visitation by David.

Furthermore, David's contention that the District Court's custody order deprives him of parental rights in violation of the rule set forth in *Babcock v. Wonnacott* (1994), 268 Mont. 149, 885 P.2d 522, is without merit. The parties' September 27, 1994, stipulation gave temporary custody of the children to Patricia and provided that "in the event of her absence . . . Kevin Roberts shall be the custodian to supervise the children in her place and stead." The court's order preserved the alternate custody agreement and merely changed the visitation arrangement. David

7

agreed to the alternate custody arrangement, and therefore, *Babcock* is not on point.

ISSUE 2

Did the District Court violate David's right to due process when it amended the pleadings to include David's right to visitation?

The District Court deemed the pleadings amended and modified the existing order related to custody and visitation, although none of the motions directly sought denial of all visitation. David asserts that the court's amendment of the pleadings violated his right to due process because he was not given notice of the issue which would be considered and an opportunity to respond.

Rule 15(b), M.R.Civ.P., permits the amendment of pleadings to conform to the evidence. The evidence presented did concern child custody issues in general and whether visitation by David would endanger the children. First, David's own motions related to custody which involves the subject of visitation. Second, Patricia's affidavit stated that she was afraid that visitation by David would have placed the children in danger. Third, the affidavit of Patricia's bodyguards stated that David made direct threats against the safety and health of Patricia and other family members.

Finally, the court, on several occasions, made statements which indicated that the question of visitation was at issue. For example, when the hearing began the court stated that "I was told in chambers that the major issue that is pending before the court

8

is related to the visitation of the respondent with his children." And, in response to an objection, the court stated that "I think an issue in this case would be whether the children may or may not be endangered by the presence of Mr. Roberts, and I want to hear the evidence about that." In another response to an objection, the court stated that "[w]e're in custody disputes and problems that we have to endanger kids." David failed to object to the presentation of evidence of serious endangerment--the statutory standard to modify visitation--and failed to take issue with the court's characterization of the issues.

David's effort to prove Patricia's violation of the temporary visitation agreement required testimony which concerned the visitation agreement, and therefore, we conclude that David's right to due process was not violated when it modified the pleadings to conform to the evidence.

ISSUE 3

Did the District Court abuse its discretion when it admitted tapes of conversations recorded without David's knowledge?

David contends that the tapes of conversations between his son Dino and him were admitted over objection in violation of § 45-8-213, MCA, which prohibits the taping of conversations without the consent of all parties.

Rule 103, M.R.Evid., provides that:

> (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

9

> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, <u>stating the specific ground of objection</u>, if the specific ground was not apparent from the context . . . .

(Emphasis added.) We have stated that we will only consider on appeal objections made at trial that are timely, specific, and based on the correct grounds. *Guertin v. Moody's Market, Inc.* (1994), 265 Mont. 61, 67, 874 P.2d 710, 714; *Bache v. Gilden* (1992), 252 Mont. 178, 182, 827 P.2d 817, 820.

At the hearing, David objected to the admission of the tapes because they had just been handed to his attorney and he had no idea what they said, and because a quick review of the transcript of the tapes (admitted at the same time) revealed that the conversation was actually a negotiation between Dino, negotiating for Patricia, and David, and negotiations are not admissible. Now, on appeal, David contends that the tapes should have been excluded because they were recorded in violation of § 45-8-213, MCA. David did not object on this basis at the hearing. Therefore, we hold that the court did not abuse its discretion when it admitted the tapes. We also note that we reached our conclusion under Issue 1 without consideration of the tapes at issue.

## ISSUE 4

Did the District Court violate David's constitutional right to travel when it ordered that he not enter Melstone, Montana?

The District Court prohibited David from entering the small community of Melstone, Montana, in order to effectively enjoin him from disturbing the peace of Patricia and his minor children.

Section 40-4-121, MCA, provides in part that:

> (2) As a part of a motion for temporary maintenance or support or by independent motion accompanied by affidavit, either party may request the court to issue a temporary injunction for any of the following relief:
> . . . .
> (b) enjoining a party from molesting or disturbing the peace of the other party or of any family member
> . . . .

We conclude that the District Court did not restrict David's right to travel but merely placed reasonable restrictions on the distance David must keep from his estranged family until the issues raised in the parties' pleadings are finally resolved. The Melstone community simply happened to be the frame of reference chosen by the court. Considering its size, this restriction should not unreasonably interfere with David's right to travel.

Neither did the court abuse its discretion by imposing this restriction on David's activities. The town of Melstone is very small and Patricia's residence can be seen from most of the businesses. At the time of the hearing, Patricia had a temporary restraining order which barred David from coming into the town of Melstone and she testified that the order assisted her because she did not "have to worry all day about what he's doing or if I see his truck, to be afraid. I don't have to be afraid to let the kids walk back and forth from school and do their normal things." She also testified that she needed an additional restraining order

11

keeping him out of Melstone "because it takes a lot of stress off me and takes a lot of stress off of the kids. We can move around freely and not live with this constant fear all the time."

We conclude that David's constitutional right to travel is neither implicated nor infringed upon by the court's order which prohibits him from entering Melstone. For these reasons we affirm the court's order which modified the parties' temporary custody and visitation agreement.

_____
Justice

We concur:

_____

_____

_____
Justices

12