No.   95-492

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN THE MATTER OF J.B.,

Youth in Need of Care.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Hon. Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chris J. Nelson, Billings, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Cregg W.
Coughlin, Assistant Attorney General, Helena,
Montana; Dennis Paxinos, Yellowstone County
Attorney, Marcia Good Sept, Deputy Yellowstone
County Attorney; Damon L. Gannett, Gannett Law Firm,
Billings, Montana (guardian ad litem)

FILED

SEP 19 1996

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:   May 9, 1996

Decided: September 19, 1996

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This is an appeal from the judgment of the Thirteenth Judicial District Court, Yellowstone County, declaring J.B. a youth in need of care and granting continued temporary custody of J.B. to the Montana Department of Family Services through May 1996.

We reverse and remand.

We address the following issue as dispositive:

Did the District Court err in granting continued temporary custody of J.B. to the Montana Department of Family Services?

FACTS

In September 1993, the Yellowstone County Attorney's Office, on behalf of the Montana Department of Family Services (DFS), petitioned for temporary investigative authority and protective services for five children of T.B. In a report to the court attached to the petition, a social worker described the problems T.B. and her children were having individually and as a family. The court granted the petition.

On January 20, 1994, the District Court issued an order declaring all five children to be youths in need of care. The order granted DFS temporary custody of the children. The court's order was based on a social worker's report which, like the September 1993 report, described the difficulties T.B. was having raising her children. This report mentioned that appellant, the natural father of one of the children, J.B., had indicated his desire to obtain custody of J.B. Appellant, who resides in Boulder, Colorado, was present at this hearing and stipulated to

2

DFS's request for temporary custody. On March 29, 1994, the District Court approved a treatment plan for the appellant which required that he submit to psychological and chemical dependency evaluations.

On June 30, 1994, DFS petitioned for permanent legal custody and termination of parental rights and the right to consent to adoption. In the petition, both J.B's mother and the appellant were listed as parents, although the petition requested only the termination of the mother's parental rights. DFS asked the court for an order granting temporary custody of J.B. to DFS for an additional six months. On September 30, 1994, appellant filed his response to DFS's request and also petitioned the court for custody of J.B.

A hearing was held on DFS's petition in November 1994. Appellant again stipulated that DFS could retain temporary custody for an additional six months. On December 12, 1994, the District Court issued an order to that effect. This order also terminated the parental rights of J.B's mother, T.B.

On April 7, 1995, the District Court approved a second treatment plan for appellant. The treatment plan required appellant to submit to four random urinalyses per month and to begin counseling to learn how to meet the emotional needs of his child. After the approval of the second treatment plan, appellant again petitioned the court for permanent custody of J.B. DFS responded by seeking to extend its temporary custody of J.B. for an additional year.

A hearing on both appellant's petition and DFS's motion for an extension of custody was scheduled for July 12, 1995. After the hearing, the District Court determined that DFS should retain temporary custody of J.B. until May 18, 1996. Appellant filed a notice of appeal on September 20, 1995.

## DISCUSSION

Did the District Court err in granting continued temporary custody of J.B. to the Montana Department of Family Services?

In their respective briefs, in the context of the grant of custody to DFS, the parties have raised issues related to but differently phrased from the issue we pose here. Based on the record, we conclude that our formulation of this issue is correct and effectively disposes of those issues raised by the parties.

This Court has held that a non-parent may be entitled to commence a child custody proceeding. In re Marriage of K.E.V. (1994), 267 Mont. 323, 883 P.2d 1246; In re Custody of R.R.K (19931, 260 Mont. 191, 859 P.2d 998 (provided that the non-parent can establish standing). Conversely, we have also recognized the need to uphold the constitutionally protected rights of a natural parent to his or her child. Babcock v. Wonnacott (1994), 268 Mont. 149, 152, 885 P.2d 522, 524; In re Matter of Doney (1977), 174 Mont. 282, 570 P.2d 575.

In the present action, there are two parties petitioning for custody of the child: J.B.'s natural father and the State of Montana (through DFS). For a court to have jurisdictional authority to grant custody to a non-parent, certain steps must be

4

followed. When the State is a party to a custody proceeding, it initially must file a petition in a district court alleging the nature of the legal custodian's abuse or neglect. Section 41-3-401, MCA. After the submission of the petition, a court will then hold an adjudicatory hearing to determine if the child is a "youth in need of care." Section 41-3-404, MCA. If the child is determined to be a youth in need of care, the court will then set a date for a dispositional hearing. At the dispositional hearing, the court has the authority to transfer legal custody of the child. Section 41-3-406, MCA.

In this matter, such a petition was submitted. All five children were declared youths in need of care. However, the allegations of abuse and neglect were made in the context of the termination of parental rights of the then custodial parent, J.B's mother T.B. In addition to the rights parents may have as a couple, they also have individual rights with respect to their children. In re Matter of T.E.R. (1979), 180 Mont. 340, 346, 590 P.2d 1117, 1121.

The State did not petition for the termination of appellant's parental rights. Indeed, upon the termination of the mother's parental and custodial rights, appellant was entitled to custody of J.B. Babcock, 885 P.2d at 524.

In Babcock, the mother was unable to provide care for the child due to incarceration. The district court in that case awarded custody to the child's great aunt. This Court reversed, holding that since the mother was unable to care for the child, the

father was entitled to the custody of the child. <u>Babcock,</u> 885 P.2d at 524. This Court based its decision in part on the constitutionally protected rights parents have to a child. Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. The Court further relied on § 40-6-221, MCA, which provides in part that:

> The father and mother of an unmarried minor child are equally entitled to the custody, services, and earnings of the child. If either parent be dead or unable or refuses to take the custody or has abandoned his or her family, the other is entitled to the custody, services, and earnings of the child, unless custody is determined otherwise pursuant to 40-4-221. (Emphasis added.)

We conclude that when the court terminated T.B.'s parental rights, she was unable to take custody of J.B. Therefore, appellant, the other parent, was entitled to custody. This entitlement is not immune from contest, but the contesting party, here DFS, must follow the proper procedure outlined above in order to obtain custody. A parent's right to custody in this situation is not so fleeting that it can hinge on a court's disposition of a related yet distinct matter. The District Court determined J.B. to be a youth in need of care and granted temporary custody to DFS based on its consideration of T.B.'s conduct toward the child; to relieve appellant of custody, the court was required to consider his conduct as well.

In other words, in order to have the jurisdictional authority to award DFS temporary custody, the court must determine that J.B. is a youth in need of care. The court must make this determination on the basis of evidence of appellant's abuse or neglect. Section

6

41-3-102(17), MCA, defines a youth in need of care as a "youth who is abused or neglected." Section 41-3-102(5)(a), MCA, defines "child abuse or neglect" as:

> (i) harm to a child's health or welfare; or
> (ii) threatened harm to a child's health or welfare.
> (b) The term includes harm or threatened harm to a child's health or welfare by the acts or omissions of a person responsible for the child's welfare.

DFS's original petition does not allege abuse or neglect on the part of appellant. However, both DFS and the court raised concerns about appellant's prior chemical dependency problems. Appellant stated and various examinations confirmed that he had not used alcohol or drugs for years. The concerns of DFS and the court were based largely on the results of a urinalysis in which appellant tested positive, but the record shows that the test results were incomplete and should properly have been considered inconclusive. In any event, these concerns clearly do not amount to a consideration of allegations of child abuse or neglect on the part of appellant, and do not provide a sufficient basis on which to conclude that J.B. would be in danger of harm or threatened harm. See In re Matter of M.G.M (1992), 201 Mont. 400, 408, 654 P.2d 994, 998.

The court failed to address any evidence of appellant's abuse or neglect of the child. "[A] finding of abuse, neglect, or dependency is the 'jurisdictional prerequisite for any court ordered transfer of custody.'" M.G.M., 654 P.2d 998 (citations omitted). We hold that the District Court erred in concluding that

7

J.B. was a youth in need of care, and therefore the court erred in granting DFS temporary custody

Our holding effectively disposes of the other issues raised by the parties. We reverse and remand for proceedings consistent with this opinion

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

September 19, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Chris J. Nelson
Attorney at Law
1643 Lewis Ave., Ste. 214
Billings, MT 59102

Hon. Joseph P. Mazurek, A.G.
Cregg W. Coughlin, Assistant
215 N. Sanders
Helena, MT 59620

Dennis Paxinos, County Attorney
Marcia Good Sept, Deputy
P.O. Box 35025
Billings, MT 59107

Damon L. Gannett, Esq.
Gannett, Anderson & Liechty
P.O. Box 1375
Billings, MT 59103-1375

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy