Ossipee Family Division
No. 2008-326

IN THE MATTER OF JAMIE M. HUFF AND LAWRENCE R. HUFF

Argued: January 15, 2009
Opinion Issued: March 5, 2009

*Minutelli Law Office, PLLC*, of Portsmouth (*Steven J. Minutelli* on the brief and orally), for the petitioner.

*Law Office of Leslie H. Johnson, PLLC*, of Center Sandwich (*Leslie H. Johnson* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner and mother, Jamie M. Huff, appeals the ruling of the Ossipee Family Division (*Patten*, J.), entered upon the recommendation of a Marital Master (*Barber*, M.), adopting the parenting plan of the respondent and father, Lawrence R. Huff. We reverse and remand.

The record supports the following. The parties married in 2005, and have one child together, K.H., born in July 2006. Both parties have children from prior marriages. During the marriage, the parties lived in Effingham. In October 2006, the mother filed a domestic violence petition, filed for divorce and returned to Leicester, Massachusetts with the child. The father was awarded parenting time every other weekend. The father usually exercised his parenting time at Kristen Wickman's residence. Wickman is the mother of the father's two daughters, ages eleven and eight.

In November 2007, while the divorce was pending, the father pleaded guilty to a felony and was sentenced to three to six years in the New Hampshire State Prison. At the final divorce hearing, the father requested one full weekend of parenting time per month. He planned to allocate the weekend between himself at the prison and Wickman, Cheryl Burns (a long-time friend of the father), or another third party. The father planned to have Wickman or Burns facilitate visitation at the prison and allow the child time to bond with his half-siblings. The parties represented to the trial court that the father could only visit with the child at the prison on Saturdays between 8:30 a.m. and 11:00 a.m. Thus, the father proposed that the child stay overnight on Friday with Wickman or Burns, visit him during the prison visiting hours, and spend the rest of the weekend with his half-siblings. He stated that he was essentially delegating his remaining parenting time to Wickman or Burns. He also stated that this arrangement would be best considering the drive from the mother's residence to the prison — approximately two hours each way.

The guardian ad litem (GAL) recommended that the father be awarded parenting time one Saturday per month and that the mother transport the child half-way and Burns, or another acceptable third party, transport the child the remaining distance to the prison. The GAL stated: "I think transporting a child is one thing, staying a weekend with people that are not related is another thing." The GAL acknowledged that the only reason for the weekend visitation would be to allow the child to visit with his half-siblings. The GAL stated that, instead, the mother and Wickman could make arrangements for the children to visit. The mother agreed with the GAL's recommendation; however, because the child is only eighteen months old, she preferred to transport the child herself the entire distance to the prison.

Each recommended parenting plan called for the father to have the same amount of actual parenting time with the child. The trial court adopted the

father's recommendation; specifically, the parenting schedule provides that the child will reside with the mother except:

> Mr. Huff shall have parenting time one weekend per month at the New Hampshire State prison, with Mr. Huff's time to be in the presence of Cheryl Burns, Kristen Wickman, or other third party acceptable to the prison and Petitioner. The child shall be picked up at approximately 8:00 on Friday and returned at 4:00 on Sunday. This will allow the child to have time with his two half siblings, whom he otherwise would not have time with.

On appeal, the mother argues: (1) there was insufficient evidence to show that the father's parenting plan was more appropriate than her plan; (2) the trial court committed legal error in awarding the father parenting time that he cannot exercise and thereby giving *de facto* parenting time to an unrelated third party; and (3) the trial court committed legal error by inappropriately applying the best interest standard.

■ The crux of the mother's arguments depends upon whether an incarcerated parent's visitation can be delegated to a third party. The mother argues that the trial court's decision to award parenting time to a third party over her objection exceeds its statutory authority and infringes upon her fundamental right to parent. We first address the mother's statutory argument. "The superior court's jurisdiction to award custody is purely statutory, and the best interests of the child guide all custody decisions in New Hampshire." *In the Matter of Jeffrey G. & Janette P.*, 153 N.H. 200, 203, (2006). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Gallagher*, 157 N.H. 421, 422 (2008).

■ RSA chapter 461-A (Supp. 2008) pertains to parental rights and responsibilities. The trial court has broad statutory authority to allocate rights between parents. *See* RSA 461-A:2. The statute encourages frequent contact between the child and both parents. *See id.* By contrast, the trial court's authority to order visitation with third parties is limited. Pursuant to RSA 461-A:6, V, the trial court may award parenting time to stepparents or grandparents. RSA chapter 461-A is silent as to custody or visitation with other third parties. There is therefore no express statutory authority to order visitation with unrelated third parties. In fact, we have held that custody *cannot* be awarded to an unrelated third party over the objection of a fit parent. *In the Matter of Nelson & Horsley*, 149 N.H. 545, 549 (2003). Here, admittedly, the trial court's order does not expressly grant visitation to an unrelated third party, but rather to an incarcerated father who delegated it to an unrelated third party. In evaluating whether such a

delegation is equivalent to granting visitation directly to a third party, we must examine the effect of incarceration upon parental abilities.

Among the factors the trial court "shall consider" in evaluating the best interest of the child and determining parental rights and responsibilities is "[i]f a parent is incarcerated, the reason for and the length of the incarceration, and any unique issues that arise as a result of incarceration." RSA 461-A:6, I(k). Thus, the legislature has acknowledged that incarceration affects one's ability to exercise parental responsibilities. The statute, however, does not instruct the trial court as to what extent incarcerated parents may delegate their authority. We must, therefore, determine whether application of this factor supports the trial court's order in this case.

■ Our case law, as well as that of other jurisdictions, suggests that the legislature included this factor because an incarcerated parent is unable to care for his child during the period of incarceration. *See In re Adam M.*, 148 N.H. 83, 85 (2002) ("Although [father's] efforts to maintain contact with his child are commendable, the fact still remains that the child has been and will be without his father's care during most of his formative years as a result of his father's criminal behavior."). Although incarceration alone "does not necessarily preclude the incarcerated parent from being a child's legal custodian," *Reed v. Albaaj*, 723 N.W.2d 50, 57 (Minn. Ct. App. 2006), an incarcerated parent is "unavailable" by reason of his or her incarceration. *See, e.g., In re L.N.*, 689 N.W.2d 893, 897 n.4 (S.D. 2004); *In re Isayah C.*, 13 Cal. Rptr. 3d 198, 207 (Ct. App. 2004); *Randy K. v. Evelyn ZZ*, 692 N.Y.S.2d 804, 806 (App. Div. 1999); *Babcock v. Wonnacott*, 885 P.2d 522, 524 (Mont. 1994); *In re Interest of Ditter*, 322 N.W.2d 642, 645 (Neb. 1982) (per curiam).

■ Because the incarcerated parent is unable to care for the child, the trial court is limited in the parental rights and responsibilities it may award an incarcerated parent. We have consistently stated that it is in the best interest of the child to be in the care of the child's parents. *See In the Matter of Nelson & Horsley*, 149 N.H. at 549. Thus, whether the incarcerated parent retains parental responsibility to designate caregivers hinges upon the status of the other parent. Limited circumstances exist that warrant the incarcerated parent retaining the right to designate a third-party caregiver. Where one parent is unfit and the other is incarcerated, for example, the incarcerated parent may maintain custody and designate a caregiver for the child. *See In re Isayah C.*, 13 Cal. Rptr. 3d at 207. Where, however, the non-incarcerated parent is fit, the incarcerated parent may not designate a third-party caregiver. *See Babcock*, 885 P.2d at 524. Instead, the non-incarcerated parent retains custody and the incarcerated parent

may visit with the child. *See id.*; *Matter of Davis v. Davis*, 648 N.Y.S.2d 742, 743 (App. Div. 1996) (incarcerated parent entitled to reasonable visitation and grandparents will provide transportation to the prison). The incarcerated parent, therefore, may not designate a third-party caregiver, over the objection of the other parent, absent a finding that the non-incarcerated parent is unfit. Where both parents are fit, the trial court may only award the incarcerated parent that visitation time which he can actually exercise.

For example, in *Babcock*, where both parents were fit, the mother had legal and physical custody of the child and the father had visitation. *Babcock*, 885 P.2d at 523. The mother was then convicted of a felony and sentenced to five years in prison. *Id.* The father requested permanent custody of the child. *Id.* The Montana trial court held that it was in the child's best interest to remain in the legal custody of the mother and awarded temporary custody to the child's maternal great aunt. *Id.* at 523-24. The father retained visitation rights. *Id.* at 524.

On appeal, the Montana Supreme Court reversed. *Id.* The court held that the incarcerated parent was unable to care for the child during her incarceration, and, thus, pursuant to statutory and constitutional authority, the father was entitled to custody. *Id.* ("right of a parent to custody of his or her child is a fundamental, constitutional right"); *see* Mont. Code Ann. § 40-6-221 ("If either parent is dead or unable or refuses to exercise parenting or has abandoned the family, the other parent is entitled to the parenting . . . of the child . . . ." ). The court said: "It has long been the law in Montana that where a third party seeks custody to the exclusion of a natural parent, the right of the natural parent prevails until a showing of forfeiture of that right." *Babcock*, 885 P.2d at 524. The court went on to say that "[a] finding of abuse, neglect, or dependency," through proper procedure, is necessary for forfeiture. *Id.* The court held that proper procedure was not followed, and thus the trial court erred in awarding custody to a third party. *Id.* at 525.

█ The *Babcock* analysis is consistent with our own law. *See In re Adam M.*, 148 N.H. at 84. RSA chapter 169-C provides procedural requirements for the court to limit parental rights. Biological and adoptive parents are "presumed to be fit parents . . . until they are found to be unfit in an abuse/neglect proceeding or a termination of parental rights proceeding." *In re Alexis O.*, 157 N.H. 781, 789 (2008) (quotation omitted). Once a parent is deemed unfit, the other parent must be awarded custody unless the State can prove that parent is also unfit. RSA 169-C:19-e, I (Supp. 2008). This is because "fit parents are presumed to act in the best interest of their children." *In the Matter of R.A. & J.M.*, 153 N.H. 82, 96 (2005) (plurality opinion). Thus, absent a determination that the non-incarcerated parent is

unfit, the trial court's statutory authority to grant third-party visitation is limited to grandparents and stepparents. *See* RSA 461-A:6, V.

■ Here, neither parent has been declared unfit. Thus, the trial court's authority is limited to awarding visitation to the incarcerated father that he can actually exercise. Time allocated to the father beyond that, which is then delegated to a third party, is equivalent to awarding an unrelated third party visitation rights. The trial court's order in effect grants visitation of an eighteen-month-old child to an unrelated third party for an entire weekend.

■ Our conclusion concerning the absence of statutory authority in this case is consistent with the right of parents to raise and care for their children, which is a fundamental liberty interest protected by Part I, Article 2 of the New Hampshire Constitution. *In the Matter of Nelson & Horsley*, 149 N.H. at 547. Similarly, the United States Supreme Court has recognized that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion). Parents' rights over their children "are not easily set aside. Only in the most unusual and serious of cases may such fundamental rights be abrogated in favor of an unrelated third person." *In the Matter of Nelson & Horsley*, 149 N.H. at 548. Parental rights "have been found to operate against the State, against third parties, and against the child." *Id.* at 547 (quotation omitted). "[P]arents have a natural entitlement to the exclusive . . . management of their children." *Id.* at 548.

The mother argues that on this record the family division should have adopted her parenting plan. Whether the mother's plan should now be adopted, in light of our decision, may require additional testimony and fact-finding. Thus, such a review is best left to the trial court. We hold, instead, that the trial court exceeded its statutory authority and remand for further proceedings consistent with this decision.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.