Cheshire County Probate Court
No. 2010-187

IN RE GUARDIANSHIP OF REENA D.

Argued: November 10, 2011
Opinion Issued: December 28, 2011

108

*Bragdon & Berkson, P.C.*, of Keene (*Kelly E. Dowd* on the brief and orally), for the petitioner.

*Lane & Bentley, P.C.*, of Keene (*Michael P. Bentley* on the brief and orally), for the respondent.

*Tower & Crocker, P.A.*, of Jaffrey (*Sheila J. Burnham* on the brief, and *Jeffrey R. Crocker* orally), for the guardian ad litem.

DALIANIS, C.J. The petitioner, Nilesh D., appeals an order of the Cheshire County Probate Court (*Weeks*, J.) denying his motion to terminate the guardianship over the person of his minor daughter, Reena, which had previously been awarded to the respondent, the petitioner's step-mother, Hasu D. We vacate and remand.

## I. Background

The following facts are taken from the record. In March 2002, the petitioner and his wife, Meeta D., petitioned the court to grant guardianship over their then twenty-month-old daughter to the petitioner's father and the respondent. The petitioner and his wife sought the guardianship because they were going to India to start a tile business and to visit with the wife's family. The court granted a temporary guardianship in March 2002 and held a hearing on a permanent guardianship in May 2002. Following the hearing, the court appointed the respondent and her husband, the petitioner's father, to be Reena's guardians.

In 2003, the petitioner's father died, and the respondent was appointed as Reena's sole guardian. In July 2003, the petitioner and his wife filed a motion to terminate the guardianship, asserting that it was no longer necessary because its purpose had been fulfilled. In December 2003, the parties and their counsel entered into a temporary stipulation, which provided, among other things, that a final hearing on the motion to terminate would be held two months after the petitioner submitted an assessment of his alcohol use. In the meantime, the guardianship would continue.

In June 2004, the respondent moved to dismiss the motion to terminate the guardianship because the petitioner had failed to submit an alcohol use assessment as required by the parties' stipulation. The trial court denied the motion to terminate the guardianship without prejudice to its future renewal.

The petitioner and his wife did not renew their motion until August 2007. The trial court held an evidentiary hearing on the motion in September 2009, and on the first day of the hearing, the petitioner submitted the required alcohol use assessment. The trial court ruled that the petitioner and his wife had the burden to show by a preponderance of the evidence "that substitution or supplementation of parental care and supervision [was] no longer necessary to provide for [their daughter's] essential physical and safety needs" and that terminating the guardianship would not "adversely affect [their daughter's] psychological well-being." RSA 463:15, V (2004). Ultimately, the court decided that the petitioner and his wife failed to meet this burden, and this appeal followed.

## II. Analysis

Our standard for reviewing probate court decisions is set forth by statute. *See* RSA 567-A:4 (2007). "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." *Id.* "Consequently, we will not disturb the probate court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law." *In re Guardianship of Domey*, 157 N.H. 775, 778 (2008) (quotation omitted).

### A. Validity of 2002 Guardianship

█ The petitioner first argues that the trial court erred when it failed to terminate the guardianship because he and his wife did not knowingly, intelligently and voluntarily consent to it in 2002. Even assuming, *arguendo*, that this is true, we conclude that the petitioner waived any challenge to the validity of the 2002 guardianship when he entered into the 2003 stipulation continuing it. The petitioner makes no claim that the December 2003 stipulation was invalid.

### B. Burden of Proof in Proceeding to Terminate Guardianship

The petitioner next asserts that the trial court violated his state and federal constitutional rights, *see* N.H. CONST. pt. I, art. 2; U.S. CONST. amend. XIV, when it interpreted RSA 463:15, V to require him and his wife to bear the burden of proof in the proceeding to terminate the guardianship. He asserts that pursuant to Part I, Article 2 of the State Constitution

and the Federal Due Process Clause, the respondent should have had the burden of proving by clear and convincing evidence that the guardianship was necessary to provide for Reena's essential physical and safety needs and to prevent significant psychological harm to her. *See* RSA 463:15, V. We first address the petitioner's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), citing federal opinions for guidance only, *id.* at 232-33.

The petitioner's argument is based, primarily, upon *Troxel v. Granville*, 530 U.S. 57 (2000). In *Troxel*, a plurality of the Court invalidated as "breathtakingly broad" a Washington statute that allowed a court to interfere with a decision by a fit custodial parent concerning visitation with any third party based solely upon the judge's view of the child's best interests. *Troxel*, 530 U.S. at 67. The *Troxel* plurality explained that because "there is a presumption that fit parents act in the best interests of their children," the trial court erred when it failed to give "special weight" to the parent's determination of the children's best interests, and when it presumed that visitation with the grandparents was in the children's best interests and placed the burden upon the fit custodial parent to disprove this. *Id.* at 68, 69. The trial court's presumption that grandparent visitation was in the children's best interests "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69.

Relying upon *Troxel*, the petitioner argues that just as the trial court in *Troxel* erred by requiring the parent to prove that grandparent visitation was not in the children's best interests, so too did the trial court in this case err by requiring the petitioner and his wife to prove that the guardianship was no longer necessary to provide for their daughter's essential physical and safety needs and that its termination would not adversely affect her psychological well-being. *See* RSA 463:15, V. By placing the burden upon the petitioner and his wife, the trial court, he asserts, "contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Troxel*, 530 U.S. at 69.

█ We have adopted the *Troxel* plurality's ruling that "fit parents are presumed to act in the best interest of their children." *In the Matter of Huff & Huff*, 158 N.H. 414, 419 (2009) (quotation omitted); *see In the Matter of Nelson & Horsley*, 149 N.H. 545, 547 (2003). We have explained that Part I, Article 2 of the State Constitution protects a parent's fundamental liberty interest in raising and caring for her children. *In the Matter of Huff & Huff*, 158 N.H. at 420. Provided that a parent is fit, "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions

concerning the rearing of that parent's children." *In the Matter of Nelson & Horsley*, 149 N.H. at 547 (quotation omitted); *see Troxel*, 530 U.S. at 68-69. Thus, "[o]nly in the most unusual and serious of cases" may a parent's fundamental parental rights "be abrogated in favor of an unrelated third person." *In the Matter of Nelson & Horsley*, 149 N.H. at 548. Absent such "unusual and serious" circumstances, "[p]arents have a natural entitlement to the exclusive companionship, care, custody, and management of their children." *Id.*

We have also ruled that fit parents are those who have not been adjudicated unfit. *In re Alexis O.*, 157 N.H. 781, 789 (2008) (biological and adoptive parents are "presumed to be fit parents . . . until they are found to be unfit in an abuse/neglect proceeding or a termination of parental rights proceeding" (quotation omitted)). Thus, in this case, the petitioner, because he has not been found unfit in an abuse/neglect or termination of parental rights proceeding, is a presumptively fit parent. *See id.*

We have not previously addressed the issues in this case, which are whether a fit biological parent is entitled to the *Troxel* presumption in a proceeding to terminate a guardianship established by consent, and, if so, what burden of proof should apply.

We first examine whether the *Troxel* presumption applies in a proceeding to terminate a guardianship established by consent. Most courts that have examined the issue since *Troxel* have held that it does. *See In re D.I.S.*, 249 P.3d 775, 783, 784 (Colo. 2011) (citing cases); *In re Guardianship of David C.*, 10 A.3d 684, 686 (Me. 2010); *In re Guardianship of D.J.*, 682 N.W.2d 238, 246 (Neb. 2004); *In re Guardianship of Barros*, 701 N.W.2d 402, 407 (N.D. 2005); *Boisvert v. Harrington*, 796 A.2d 1102, 1108 (Vt. 2002); *In re SRB-M*, 201 P.3d 1115, 1119-20 (Wyo. 2009). These courts reason that a parent of a child in a guardianship established by consent is presumptively fit and, thus, the parent's decision to terminate the guardianship is entitled to due regard. *See In re D.I.S.*, 249 P.3d at 784.

A minority of jurisdictions disagree, holding that a parent who voluntarily relinquishes the care, custody and control of his child by consenting to a guardianship also relinquishes his entitlement to the *Troxel* presumption. For instance, in *In re Guardianship of L.V.*, 38 Cal. Rptr. 3d 894, 896, 902 (Ct. App. 2006), the court ruled that "*Troxel* and its California progeny have no application" to a case involving a guardianship established by consent "because they dealt with judicial interference in the day-to-day child rearing decisions of a fit, *custodial* parent." The court explained that the fundamental right to parent derives from a parent's biological connection to the child "and from acting in the role of parent." *In re Guardianship of L.V.*, 38 Cal. Rptr. 3d at 903 (emphasis omitted). Thus, the court reasoned, when parents have relinquished their day-to-day parental rela-

tionship, "they were not entitled to the constitutional protection afforded to parents who are acting in that role." *Id.* at 904; *see In re D.I.S.*, 249 P.3d at 788 (Martinez, J., dissenting) (fit parents entitled to *Troxel* presumption "are custodial parents, with intact parental rights, actively raising their children"); *see also Grant v. Martin*, 757 So. 2d 264, 266 (Miss. 2000) ("Because stability in the lives of children is of such great importance . . . a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, has forfeited the right" to the presumption that it is in the best interests of the child to remain with the parent.).

■ We align ourselves with the majority of courts, which have held that a parent does not relinquish his fundamental liberty interest in raising his child by consenting to a guardianship, and, thus, is entitled to the *Troxel* presumption in a proceeding to terminate the guardianship. Such a conclusion best comports with *Troxel* and its New Hampshire progeny. In New Hampshire, all parents who have not been adjudicated unfit in an abuse/neglect or termination of parental rights proceeding are presumptively fit. *See In the Matter of Huff & Huff*, 158 N.H. at 419. This principle applies equally to custodial and noncustodial parents. *See id.* at 420 (incarcerated parent presumed fit because he had not been declared unfit in judicial proceeding). The parent of a child in a guardianship established by consent is no less fit merely because he is not exercising his custodial rights.

■ Recognizing the *Troxel* presumption in a proceeding to terminate a guardianship established by consent not only satisfies constitutional concerns, but serves important policy interests. As the Colorado Supreme Court has explained:

> An important characteristic of a guardianship by parental consent is that parents have exercised their fundamental right to place their child in the custody of another . . . [to] further[] the child's best interests. Failure to accord fit parents a presumption in favor of their decision to terminate a guardianship established by parental consent would penalize their initial decision to establish the guardianship and deter parents from invoking the guardianship laws as a means to care for the child while they address significant problems that could impair the parent-child relationship or the child's development.

*In re D.I.S.*, 249 P.3d at 783 (citation omitted); *see In re Guardianship of D.J.*, 682 N.W.2d at 246.

■ ■ Having concluded that fit parents are entitled to the *Troxel* presumption when they seek to terminate a guardianship established by consent, we now turn to the applicable burden of proof. Most courts hold that because of the *Troxel* presumption, the burden of proof is on the guardian opposing termination of the guardianship. *See, e.g., In re D.I.S.*, 249 P.3d at 784-86; *In re Guardianship of D.J.*, 682 N.W.2d at 246; *In re SRB-M*, 201 P.3d at 1121. The guardian bears the burden of proof in a proceeding to terminate the guardianship because the fit parent's decision to terminate the guardianship must be accorded "special weight," and is presumed to be in the child's best interests. *Troxel*, 530 U.S. at 69; *see In re D.I.S.*, 249 P.3d at 783-84.

■ We agree with these courts and conclude that in the context of RSA 463:15, V and our obligation to construe it so that it comports with state and federal constitutional requirements, *see In the Matter of Rupa & Rupa*, 161 N.H. 311, 317 (2010), the guardian opposing terminating the guardianship bears the burden of proving "that substitution or supplementation of parental care and supervision" is "necessary to provide for the essential physical and safety needs of the minor" and that terminating the guardianship will "adversely affect the minor's psychological well-being." RSA 463:15, V; *see In re Guardianship of Nicholas P.*, 162 N.H. 199, 205 (2011) (rejecting claim that guardianship is *de facto* termination of parental rights and holding that *Troxel* requires only that trial court give parent's decision presumption of validity).

We next turn to whether the guardian must meet a preponderance of the evidence standard or a clear and convincing evidentiary standard. *Compare In re D.I.S.*, 249 P.3d at 786 (preponderance of the evidence), *In re Guardianship of David C.*, 10 A.3d at 686 (same), *and In re Guardianship of Barros*, 701 N.W.2d at 408-09 (same), *with In re Guardianship of D.J.*, 682 N.W.2d at 246 (clear and convincing evidence), *and Boddie v. Daniels*, 702 S.E.2d 172, 175 (Ga. 2010) (same).

■ We have previously applied a clear and convincing standard of proof in disputes between parents and nonparents over custody of a minor. For instance, in *In re Guardianship of Nicholas P.*, 162 N.H. at 204-05, we held that granting the child's half-brother's petition for guardianship over the opposition of the child's biological mother comported with *Troxel* because he had been required to prove, by clear and convincing evidence, that the child's best interests required "substitution or supplementation of parental care and supervision" to provide for the child's "essential physical and safety needs" or to prevent "specific, significant psychological harm" to the child. RSA 463:8, III (2004). We explained that the clear and convincing evidentiary standard obligated the trial court to give the parent's decision

a presumption of validity, which, we held, is all that *Troxel* requires. *In re Guardianship of Nicholas P.*, 162 N.H. at 205.

Similarly, in *In the Matter of R.A. & J.M.*, 153 N.H. 82, 99, 109-10 (2005), a majority of the court ruled that, for the purposes of a statutory provision that allowed a court to award custody to a stepparent or grandparent if the award was in the child's best interests, the State Constitution required the stepparent or grandparent seeking custody to prove by clear and convincing evidence that the stepparent or grandparent should obtain custody.

■ In keeping with our prior decisions, we now hold that the clear and convincing standard of proof applies to the guardian's burden of proof in a proceeding to terminate a guardianship established by consent. Because the trial court applied the incorrect burden of proof in this case, we vacate its order and remand for further proceedings consistent with this opinion. Because the petitioner has prevailed under the State Constitution, we need not decide his arguments under the Federal Constitution. *See Ball*, 124 N.H. at 237. In light of our decision, we also need not address the petitioner's remaining arguments.

*Vacated and remanded.*

DUGGAN, HICKS, CONBOY and LYNN, JJ., concurred.