10th Circuit Court — Brentwood Family Division
No. 2012-384

IN RE GUARDIANSHIP OF MATTHEW L.

Argued: November 27, 2012
Opinion Issued: December 21, 2012

*Bragdon, Dowd & Kossayda, P.C.*, of Keene (*Kelly E. Dowd* on the brief and orally), for the petitioner.

*Harvey & Mahoney, P.A.*, of Manchester (*J. Campbell Harvey* on the brief), and *Gay & Lesbian Advocates & Defenders*, of Boston, Massachusetts (*Janson Wu* on the brief and orally), for the respondent.

*Rebecca G. Whitley*, of Concord, for Disabilities Rights Center, Inc., as *amicus curiae*.

*Wilmer Cutler Pickering Hale and Dorr LLP*, of Washington, D.C. (*Kyle Turley* and *Daniel S. Volchok* on the brief), for the National Association of Social Workers and the National Association of Social Workers New Hampshire Chapter, as *amici curiae*.

HICKS, J. The respondent, Joan M., appeals an order of the 10th Circuit Court — Brentwood Family Division (*MacLeod*, J.) granting the petition to terminate her co-guardianship over the minor, Matthew L., filed by the petitioner, Mary S., the minor's biological mother and co-guardian. We affirm.

The trial court found, or the record supports, the following facts. The parties were involved in a serious relationship from mid-2004 until March

2008. In 2006, the petitioner became pregnant through artificial insemination, and in April 2007, she gave birth to Matthew. In June 2007, the parties petitioned the court to appoint them as Matthew's co-guardians so as to "establish[ ] a familial relationship between the child and both [the petitioner] and [the respondent]."

In March 2008, the petitioner ended her relationship with the respondent and, in June 2008, she filed a motion to terminate the guardianship. In October 2009, the motion was denied. In June 2010, the petitioner filed a new motion to terminate the guardianship. In December 2011, after the first day of the hearing on the petitioner's motion had concluded, we issued our decision in *In re Guardianship of Reena D.*, 163 N.H. 107 (2011).

*Reena D.* involved a proceeding to terminate a consensual guardianship over the petitioner's minor daughter. *Reena D.*, 163 N.H. at 109; *see* RSA 463:8, III(a), :15, V (2004). The petitioner argued that the trial court violated his state and federal constitutional rights when it required him and his wife, rather than the guardian, to bear the burden of proof in the termination proceeding. *Reena D.*, 163 N.H. at 110-11.

RSA 463:15, V governs the termination of both consensual and nonconsensual guardianships over minors. It provides:

> The guardianship of the person shall be terminated upon a showing, by a preponderance of the evidence, that substitution or supplementation of parental care and supervision is no longer necessary to provide for the essential physical and safety needs of the minor and termination of the guardianship will not adversely affect the minor's psychological well-being.

RSA 463:15, V. In *Reena D.*, we held that by interpreting RSA 463:15, V to place the burden of proof on the petitioner and his wife, the trial court "contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Reena D.*, 163 N.H. at 111 (quotation omitted); *Troxel v. Granville*, 530 U.S. 57, 69 (2000). We concluded that in light of our obligation to construe RSA 463:15, V consistent with constitutional requirements, the guardian opposing the termination of a consensual guardianship must bear the burden of proof and must meet a clear and convincing evidentiary standard. *Reena D.*, 163 N.H. at 114-15. Relying upon the language of RSA 463:15, V, we stated that the guardian opposing the termination of a consensual guardianship "bears the burden of proving 'that substitution or supplementation of parental care and supervision' is 'necessary to provide for the essential physical and safety needs of the minor' and that terminating the guardianship will 'adversely affect the minor's psychological well-being.' " *Id.* at 114 (quoting RSA 463:15, V).

The hearing in the instant matter resumed in March 2012, three months after *Reena D.* was issued. The parties agreed that *Reena D.* applied and that it required the respondent to bear the burden of proof by clear and convincing evidence. Because she now had the burden of proof, the respondent renewed an earlier motion to obtain an expert to "testify on the . . . impact of the termination on the minor child's psychological wellbeing," and asked either for a continuance or to "start [the trial] anew." The trial court denied these motions, and ultimately decided that the respondent had failed to prove by clear and convincing evidence that it was necessary for Matthew's essential physical and safety needs to substitute or supplement the petitioner's parental care and supervision of him. The trial court, therefore, granted the petition to terminate the guardianship, and this appeal followed.

Under RSA 567-A:4 (2007): "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." Consequently, we will not disturb the probate division's decree "unless it is unsupported by the evidence or plainly erroneous as a matter of law." *Id.* at 110 (quotation omitted).

The respondent first argues that the trial court erred when it denied her motion to continue the trial or for a new trial. The trial court has broad discretion in managing the proceedings before it. *In the Matter of Sawyer & Sawyer*, 161 N.H. 11, 18 (2010). "We review a trial court's rulings in this area under an unsustainable exercise of discretion standard." *Id.* (quotation omitted).

■ We cannot conclude that the trial court's decision was an unsustainable exercise of its discretion. Our decision in *Reena D.* was issued three months before the evidentiary hearing reconvened. Three months before the hearing, the respondent's counsel knew or should have known that the respondent had the burden of proof. Moreover, as the petitioner aptly observes, "[a]lthough . . . *Reena D.* shifted the burden of proof, it did not change the substantive evidence involved in the termination hearing." Regardless of which party had the burden of proof, the issues in the hearing remained the same: (1) whether the guardianship was necessary to provide for the minor's essential physical and safety needs; and (2) whether terminating it would adversely affect the minor's psychological well-being.

With regard to evidence of Matthew's psychological well-being, the record shows that the court appointed a guardian ad litem (GAL) specifically to assess the effect on Matthew if the guardianship were terminated. In addition to providing a report, which included information from Matthew's therapist and the parties' co-parenting counselor, the GAL was

deposed, and the transcript of her deposition was accepted as evidence. Given all of the circumstances, the trial court reasonably concluded that neither a continuance nor a new trial was warranted.

The respondent next argues that the trial court misinterpreted *Reena D.* to require her to prove *both* that the guardianship remained necessary to provide for Matthew's essential physical and safety needs *and* that terminating it would adversely affect his psychological well-being. The petitioner rightly contends that the respondent did not preserve this argument for our review.

 "The general rule is that a contemporaneous and specific objection is required to preserve an issue for appellate review." *Appeal of Alexander*, 163 N.H. 397, 406 (2012) (quotation omitted). "This rule, which is based on common sense and judicial economy, recognizes that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." *Petition of Guardarramos-Cepeda*, 154 N.H. 7, 9 (2006) (quotation omitted). In this case, the record on appeal demonstrates that the respondent never argued to the trial court that it had held her to an incorrect standard regarding the factors she needed to prove in order to prevail. However, although the argument is not preserved, the respondent raises public policy concerns that the legislature may wish to address. For this reason, we set forth the parties' arguments about this issue in more detail.

The respondent observes that to *obtain* a *nonconsensual* guardianship, a prospective guardian must show that "the best interests of the minor require substitution or supplementation of parental care and supervision [*either*] to provide for the essential physical and safety needs of the minor *or* to prevent specific, significant psychological harm to the minor." RSA 463:8, III(b) (2004) (emphasis added). The test to obtain a guardianship over a parent's objection is, thus, disjunctive.

By contrast, in *Reena D.*, we stated that to prevail in a proceeding to *terminate* a previously *consensual* guardianship, a guardian must prove *both* that " 'substitution or supplementation of parental care and supervision' is 'necessary to provide for the essential physical and safety needs of the minor' *and* that terminating the guardianship will 'adversely affect the minor's psychological well-being.' " *Reena D.*, 163 N.H. at 114 (emphasis added); *see* RSA 463:15, V. The test we articulated in *Reena D.* is, thus, conjunctive.

The respondent argues that the two tests — to obtain a guardianship over a parent's objection and to maintain a previously consensual guardianship over a parent's objection — were intended to be consonant. According to the respondent, both tests should be disjunctive:

> New Hampshire law basically requires that a guardianship exist in two separate situations: (A) if it is necessary for the physical and safety needs of the child, or (B) if it is necessary to avoid adverse effects to the child's psychological well-being. That is why [RSA 463:8, III(B)] . . . allows a guardianship to be established despite parental objection if either of those situations exists, and that is why [RSA 463:15, V] allows a guardianship to be terminated only if neither of those situations still exists.

Thus, she argues, if the burden of proof is placed on the guardian in a termination proceeding, consistent with *Reena D.*, and if the above framework is to be preserved, "the correct standard must be that the guardian need prove that only one, but not both, of those situations exists in order to continue the guardianship." She argues, therefore, that the trial court erred when it interpreted *Reena D.* to require her to prove both parts of a conjunctive test.

The petitioner counters that there is no need for the test we set forth in *Reena D.* to be consonant with RSA 463:8, III(b), because RSA 463:8, III(b) applies only to nonconsensual guardianships, and *Reena D.* applies only to consensual guardianships. In effect, the petitioner argues, the respondent is comparing apples to oranges.

The petitioner also observes that even if we were to adopt the respondent's argument, the standards for creating, and for maintaining, a guardianship over a parent's objection would still be inconsistent. To obtain a guardianship over a parent's objection, a potential guardian must show that the guardianship is necessary "to prevent specific, significant psychological harm to the minor," RSA 463:8, III(b), whereas to maintain a previously consensual guardianship, a guardian must show that its termination "will . . . adversely affect the minor's psychological well-being," RSA 463:15, V; *see Reena D.*, 163 N.H. at 114. Thus, the petitioner asserts that the proof required to obtain a guardianship over objection is more exacting than that required to maintain a previously consensual guardianship over objection.

Both parties and the *amici* argue that important public policies support their respective positions. The respondent, for instance, argues that "having different standards for the creation and termination of guardianships would foster instability in children's lives, thereby contravening the entire purpose of guardianships." The petitioner asserts that if a guardian can maintain a previously consensual guardianship by showing only that its termination would "adversely affect the minor's psychological well-being," RSA 463:15, V, then a fit parent will only rarely be able to terminate a consensual guardianship. This, the petitioner asserts, is

contrary to the public policy of encouraging struggling parents to enter into consensual guardianships to protect their children. "As a public policy matter," the petitioner argues, "it should be *easier* to terminate a [consensual] guardianship than it is to create a guardianship over the objection of the parents."

Although, because the respondent did not preserve these arguments for our review, we leave them for another day, we note that they may be ripe for a legislative resolution. We encourage the legislature to review RSA 463:8, III (2004) and RSA 463:15, V and make such changes as it sees fit, consistent with the central holding of *Reena D.* that in a proceeding to terminate a consensual guardianship, the opposing guardian has the burden of proof by a clear and convincing evidentiary standard. *Reena D.*, 163 N.H. at 115.

Finally, the respondent asserts that even if the trial court correctly interpreted *Reena D.*, that case does not apply because the parties used the guardianship to create a two-parent family, and the respondent "stands *in loco parentis* to Matthew." This is also an argument that the respondent did not preserve for our review. In the trial court, the respondent expressly agreed that *Reena D.* governed these proceedings.

*Affirmed.*

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.