6th Circuit Court — Franklin Family Division
No. 2012-238

## IN RE GUARDIANSHIP OF RAVEN G. & a.

Submitted: April 17, 2013
Opinion Issued: May 14, 2013

*Puckhaber Law Offices, PLLC*, of Concord (*Diane M. Puckhaber* on the brief), for the respondent.

*Jessica B.*, self-represented party, filed no brief.

*Michael A. Delaney*, attorney general (*Jeanne P. Herrick*, attorney, on the memorandum of law), for the State of New Hampshire, as *amicus curiae*.

LYNN, J. The respondent, Cheryl C., appeals an order of the 6th Circuit Court — Franklin Family Division (*Gordon*, J.) granting the petition to terminate her guardianship over her grandchildren, Raven G. and Salem G., filed by the petitioner, Jessica B., the minors' biological mother. We vacate and remand.

The trial court found the following facts. In November 2007, the respondent petitioned for guardianship over her grandchildren. The court granted her *ex parte* motion for temporary guardianship. Following a hearing in January 2008, at which both parents appeared and testified, the court found that the respondent had "establish[ed] by clear and convincing evidence that the best interests of the minor[s] require substitution or supplementation of parental care and supervision to provide for the essential physical and safety needs of the minor[s] or to prevent specific, significant psychological harm to the minor[s]." *See* RSA 463:8, III(b) (Supp. 2012). The court found that continuing the temporary guardianship was in the best interests of both children because their parents, the petitioner and Stacey G., engaged in domestic violence and the illegal use of controlled drugs while the children were in their care. The court ordered that the temporary guardianship would remain in effect until the petitioner and Stacey G. complied with a number of conditions to "demonstrate[] that they are responsible enough to act as parents."

In May 2008, after another hearing, the court found that neither the petitioner nor Stacey G. was complying with these conditions and that they

had not "sufficiently demonstrate[d] that [they] can act responsibly as parents." The court made the guardianship permanent and provided for supervised contact between the children and their parents at the respondent's discretion.

The petitioner was subsequently incarcerated for several months as a result of a criminal conviction and was then released on probation. In January 2010, she filed a motion seeking appointment of a guardian ad litem (GAL). A GAL was appointed, and the parties worked out an agreement allowing gradually increased contact between the petitioner and the children.

In February 2011, the petitioner moved to terminate the guardianship, asserting that she had complied with all of the conditions set forth by the court in January 2008. The respondent objected to terminating the guardianship. Stacey G. also opposed termination, but argued that he should be given unrestricted and unsupervised time with the children. The court held a hearing on the motion to terminate on three non-consecutive days in July, October, and November 2011.

At the hearing, the petitioner admitted that she had not complied with the January 2008 order but argued that the court should permit her to integrate the children into her life rather than continue the artificial relationship imposed by the guardianship. The GAL testified that he believed it would be in the best interests of the children to terminate the guardianship gradually. The respondent and Stacey G. took issue with the GAL's recommendation, arguing that he had limited contact with the children and was biased. The respondent's expert witness, Joanna Bunker Rohrbaugh, Ph.D., submitted an expert report and testified at the hearing. She concluded that both children had been physically and sexually abused by the petitioner and her daughter Celia. Dr. Rohrbaugh opined that forcing the children to spend time with their mother would be emotionally devastating for them and recommended that any such contact be supervised by a professional.

On January 24, 2012, the court issued an order granting the petitioner's motion to terminate the guardianship upon approval of a parenting plan to address the needs of the children and the rights and responsibilities of the parents. The court first recited the standard for terminating a guardianship set forth in RSA 463:15, V (2004):

> The guardianship of the person shall be terminated upon a showing, by a preponderance of the evidence, that substitution or supplementation of parental care and supervision is no longer necessary to provide for the essential physical and safety needs of the minor and termination of the guardianship will not adversely affect the minor's psychological well-being.

However, the court read our decision in *In re Guardianship of Reena D.*, 163 N.H. 107 (2011), as requiring it to apply a different standard. In *Reena D.*, we stated:

> [T]he guardian opposing terminating the guardianship [established by consent] bears the burden of proving "that substitution or supplementation of parental care and supervision" is "necessary to provide for the essential physical and safety needs of the minor" and that terminating the guardianship will "adversely affect the minor's psychological well-being." RSA 463:15, V . . . .
>
> . . . .
>
> [W]e now hold that the clear and convincing standard of proof applies to the guardian's burden of proof in a proceeding to terminate a guardianship *established by consent.*

*Reena D.*, 163 N.H. at 114-15 (emphasis added). The trial court concluded that *Reena D.* applied to this case, and, therefore, that the respondent bore the burden of proving by clear and convincing evidence that the petitioner and Stacey G. were not "fit to fulfill their parental roles." The court ruled that the respondent failed to meet this burden. The respondent moved for reconsideration, arguing that *Reena D.* did not apply because the guardianship here had been established over the parents' objection rather than by consent. The court denied reconsideration, ruling that "[p]arents who object to a guardianship have no [fewer] rights than parents who give consent." This appeal followed.

On appeal, the respondent and *amicus* argue that the standard articulated in *Reena D.* does not apply because the guardianship in this case was contested rather than established by consent. Alternatively, the respondent argues that, even if the court applied the correct standard, she has shown by clear and convincing evidence that the petitioner and Stacey G. are unfit parents. We agree that *Reena D.* does not apply because the guardianship in this case was contested and not consensual.

In *Reena D.*, the parents petitioned the court to grant guardianship over their infant daughter to the child's grandfather and his wife. *Reena D.*, 163 N.H. at 109. The parents sought guardianship because they were going to India to start a business. *Id.* The court established a temporary and then permanent guardianship. *Id.* Several years later, the parents sought to terminate the guardianship. *Id.* at 110. Following a hearing, the court ruled that the parents had not met their burden of "show[ing] by a preponderance of the evidence 'that substitution or supplementation of parental care and supervision [was] no longer necessary to provide for [their daughter's]

essential physical and safety needs' and that terminating the guardianship would not 'adversely affect [their daughter's] psychological well-being.' RSA 463:15, V (2004)." *Id.*

On appeal, we vacated and remanded. We relied on the so-called *Troxel* presumption, *see Troxel v. Granville*, 530 U.S. 57 (2000), that a fit parent, *i.e.*, a parent who has not been adjudicated unfit, is presumed to act in the best interests of the child, and the trial court must therefore accord "special weight" to a fit parent's determination of what is in the child's best interests. *Reena D.*, 163 N.H. at 111-12; *see Troxel*, 530 U.S. at 68-69. We then addressed "whether a fit biological parent is entitled to the *Troxel* presumption in a proceeding to terminate a guardianship *established by consent*, and, if so, what burden of proof should apply." *Reena D.*, 163 N.H. at 112 (emphasis added).

We adopted the view held by the majority of states: "a parent does not relinquish his fundamental liberty interest in raising his child by consenting to a guardianship, and, thus, is entitled to the *Troxel* presumption in a proceeding to terminate the guardianship." *Id.* at 113. Given that a fit parent's consent to a guardianship is presumed to be in the child's best interests and must therefore be accorded "special weight," we held that a guardian opposing a parent's requested termination of a consensual guardianship must overcome the *Troxel* presumption. *Id.* at 113-14. The guardian bears the burden to show by clear and convincing evidence "that substitution or supplementation of parental care and supervision is necessary to provide for the essential physical and safety needs of the minor and that terminating the guardianship will adversely affect the minor's psychological well-being." *Id.* at 114 (quotations omitted); *see* RSA 463:15, V.

By contrast, in a *contested* guardianship, the *Troxel* presumption must be overcome when the guardianship is first established over a parent's objection. In *In re Guardianship of Nicholas P.*, 162 N.H. 199 (2011), the mother appealed the trial court's order awarding guardianship of her son to the son's half-brother. *Nicholas P.*, 162 N.H. at 200, 202. She argued that the trial court's decision violated her fundamental right to parent her child, N.H. CONST. pt. I, art. 2; U.S. CONST. amend. XIV, and that the trial court failed to accord "special weight" to her assessment of her son's best interests, as required by *Troxel. Id.* at 204. We disagreed and held that the *Troxel* presumption is subsumed within RSA 463:8, III(b), the statute setting forth the burden of proof for a party to establish guardianship over a parent's objection.

> Our statute . . . safeguards a parent's fundamental rights by imposing a high evidentiary standard — that is, by requiring a

non-parent seeking a substitute guardianship to establish the need for it by clear and convincing evidence. While there is a presumption that fit parents act in the best interests of their children, that presumption is subsumed in the clear and convincing evidence standard.

*Id.* at 205.

■ Thus, an individual seeking to establish a guardianship *over a parent's objection* must overcome the *Troxel* presumption by showing by clear and convincing evidence that the guardianship is, in fact, necessary and in the best interests of the child. *Id.*; RSA 463:8, III(b). An individual seeking to establish a guardianship *with the parents' consent,* however, need show only by a preponderance of the evidence that the guardianship is in the best interests of the child. *Compare* RSA 463:8, III(a), *with* RSA 463:8, III(b). Our decision in *Reena D.* restored the *Troxel* presumption when a parent seeks to terminate a guardianship to which the parent once consented by requiring the guardian to show by clear and convincing evidence both that the guardianship is still necessary and that it is still in the child's best interests. *Reena D.,* 163 N.H. at 114. This is not the situation here.

■ Because the original guardianship in this case was contested and was established over the petitioner's and Stacey G.'s objection, our holding in *Reena D.* does not apply. The trial court ordered the guardianship to be made permanent after concluding that the respondent had satisfied the requirements of RSA 463:8, III(b) by clear and convincing evidence. The petitioner received the benefit of the *Troxel* presumption when the court subjected the respondent to this exacting burden of proof in order to obtain the guardianship. *See Nicholas P.,* 162 N.H. at 205. *Troxel* does not require the respondent to meet this burden again when opposing the termination of the guardianship. Rather, to terminate a contested guardianship that was established by clear and convincing evidence to be in the children's best interests, the petitioner must "show[], by a preponderance of the evidence, that substitution or supplementation of parental care and supervision is no longer necessary to provide for the essential physical and safety needs of the minor and termination of the guardianship will not adversely affect the minor's psychological well-being." RSA 463:15, V.

Because the trial court applied an erroneous burden of proof, we vacate its order and remand for further proceedings consistent with this opinion.

■ The respondent argues that she should have prevailed even under the more demanding, though incorrect, standard applied by the trial court because she proved by clear and convincing evidence that the guardianship

should not be terminated. The trial court was presented with conflicting testimony about the necessity of continuing the guardianship. Dr. Rohrbaugh concluded that awarding sole parenting responsibilities to the petitioner would be "extremely detrimental" to the children because of ongoing sexual abuse of Raven by her mother and half-sister. The GAL, however, recommended gradually terminating the guardianship so that the children may be "eased into the relationship" with the petitioner. Even the witnesses' basic observations varied widely. During an interview with Raven, Dr. Rohrbaugh observed her and concluded that she was afraid of, angry at, and uncomfortable with the petitioner. By contrast, when the GAL observed the children with the petitioner, he concluded that both "children were very comfortable being with Mom." We therefore cannot conclude that a finding that the guardianship should be continued was required as a matter of law. Cf. *Lampesis v. Travelers Ins. Co.*, 101 N.H. 323, 330 (1958).

*Vacated and remanded.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.