Rel: April 19, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

### CL-2023-0201

_____

## Mary Wilson-Hinson

### v.

## Jesse Hinson

### Appeal from Lee Circuit Court
### (DR-20-900026)

MOORE, Presiding Judge.

Mary Wilson-Hinson ("the mother") appeals from a judgment entered by the Lee Circuit Court ("the trial court") awarding Jesse Hinson ("the father") visitation with the parties' minor child, with the right to delegate his visitation rights to George David Hinson and

Tommie W. Hinson ("the paternal grandparents"). We reverse the trial court's judgment and remand the case with instructions.

Background

In pertinent part, the record shows that the child was born in September 2018 during the marriage of the parties. In October 2019, the parties separated after the father was incarcerated for crimes involving the unlawful sale of securities. In January 2020, the mother filed a complaint seeking a divorce from the father; the trial court subsequently granted the parties a divorce but reserved ruling on any child-custody matters. In April 2021, the paternal grandparents filed a motion to intervene to request visitation with the child. In May 2021, the trial court entered a pendente lite order allowing the paternal grandparents to intervene and awarding them supervised visitation with the child for three hours each month. In November 2021, after the father had been released from incarceration, the trial court vacated that part of the pendente lite order awarding the paternal grandparents visitation with the child and entered a new pendente lite order awarding the father visitation with the child. The new pendente lite order stated that "the

father may assign his visitation to [the paternal grandparents] as he sees fit."

On April 30, 2022, the father was again incarcerated following his conviction for other crimes relating to the unlawful sale of securities. As part of his sentence, he was ordered to be imprisoned for three years. The case proceeded to a final hearing on July 28, 2022. Three days before the hearing, the paternal grandparents filed a second motion to intervene to again request visitation with the child; however, the paternal grandparents had remained parties to the case and the trial court therefore denied the motion to intervene as moot. The paternal grandmother was allowed to testify in support of the paternal grandparents' request for visitation.

At the time of the July 2022 hearing, the father was serving his sentence at the Kilby Correctional Facility ("Kilby"). No party offered any evidence regarding whether Kilby allowed prisoners to visit with their children or the schedule followed at Kilby for such visitation. At trial, the father testified as follows:

> "[Counsel for the father]: Are you wanting [the trial court] to give you visitation?

"[The father]: I'm asking [the trial court] to give [the paternal grandparents] visitation.

"[Counsel for the father]: While you're incarcerated?

"[The father]: While I'm incarcerated, yes.

"[Counsel for the father]: When you get out, you would like to be able to petition [the trial court] to have visitation, personally?

"[The father]: Absolutely."

The paternal grandmother testified that she would like to have visitation with the child one weekend a month "while [the father] is incarcerated."

On October 27, 2022, the trial court entered a final judgment awarding the mother sole legal and sole physical custody of the child and child support, awarding the father visitation with the child, and denying all other requests for relief. The judgment provides, in pertinent part: "Visitation with the father shall be the 3rd Saturday of each month from 9:00 a.m. until 6:00 p.m. He may delegate those visits to his parents, but if he does so, they must confirm their intent to exercise his visitation by the 2nd Saturday of each month." The mother timely filed a postjudgment motion challenging the visitation provision, which was

denied by operation of law. See Rule 59.1, Ala. R. Civ. P. On March 20, 2023, the mother timely filed a notice of appeal to this court.

Issues

On appeal, the mother argues, as she did in her postjudgment motion, that the trial court abused its discretion in awarding the father visitation with the child and in allowing the father to delegate his visitation rights to the paternal grandparents. The mother maintains that the trial court did not receive sufficient evidence to support its award of visitation to the father and that the trial court, in substance, awarded visitation to the paternal grandparents without complying with the Alabama Grandparent Visitation Act ("the GVA"), § 30-3-4.2, Ala. Code 1975, in violation of her due-process rights.

Standard of Review

"The trial court has broad discretion in determining the visitation rights of a noncustodial parent, and its decision in this regard will not be reversed absent an abuse of discretion." Carr v. Broyles, 652 So. 2d 299, 303 (Ala. Civ. App. 1994). Every case involving a visitation issue must be decided on its own facts and circumstances, but the primary

5

consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child. Watson v. Watson, 555 So. 2d 1115, 1116 (Ala. Civ. App. 1989).

## Analysis

Alabama law provides a noncustodial parent with reasonable visitation rights if that visitation is in the best interests of his or her child. Naylor v. Oden, 415 So. 2d 1118, 1120 (Ala. Civ. App. 1982). In assessing whether it is in the best interests of a child to visit with an incarcerated parent, the trial court should consider, among other factors, the age of the child, the relationship between the parent and the child, the reason for the incarceration, the length of the incarceration, the visitation environment, the potential psychological impact on the child of in-prison visits, and the feasibility of the visitation. See, e.g., Robert SS. v. Ashley TT., 143 A.D.3d 1193, 1194, 40 N.Y.S.3d 245, 246 (2016); D.R.C. v. J.A.Z., 612 Pa. 519, 536, 31 A.3d 677, 687 (2011); Harmon v. Harmon, 943 P.2d 599, 605 (Okla. 1997). Another factor to be considered is the willingness of the incarcerated parent to visit with the child under the conditions of his or her imprisonment.

6

In this case, the father testified that he would not be seeking to exercise any visitation with the child until he was released from prison. The father had evidently determined that it would not be in the best interests of the child for him to visit with the child in a prison environment. Consequently, the father did not even attempt to make a case that he should be awarded visitation with the child during his incarceration. We agree with the mother that the trial court did not receive any evidence showing that it would be in the best interests of the child, who was three years old at the time of trial, to visit with the father while he was incarcerated. Accordingly, the trial court should not have awarded the father visitation with the child.

Likewise, the trial court should not have awarded the father the right to delegate any visitation rights to the paternal grandparents. The paternal grandparents asserted their own claim to visitation with the child, but the trial court denied that claim in the final judgment when it ordered that all motions and requests not specifically granted were denied. The judgment nevertheless affords the paternal grandparents the right to exercise visitation with the child as designees of the father so

7

long as all conditions of the visitation provision are satisfied. As the mother argues, the visitation provision circumvents the GVA.

Ordinarily, a fit noncustodial parent who has been awarded reasonable visitation rights with a child may authorize a family member to visit with the child during the noncustodial parent's visitation period. In at least one plurality opinion, this court has also recognized that, under appropriate circumstances, a noncustodial parent who is unable to exercise his or her visitation rights may delegate those rights to a family member until parental visitation can be resumed. See McQuinn v. McQuinn, 866 So. 2d 570 (Ala. Civ. App. 2003) (plurality opinion). However, as will be shown, the plurality opinion in McQuinn does not support the trial court's decision in this case to empower the father to delegate his visitation rights to the paternal grandparents.

In McQuinn, a Tennessee court entered a judgment divorcing Scott McQuinn and Jamie McQuinn. The Tennessee court found that it was in the best interests of the McQuinns' minor children for Scott to have visitation with them every other Saturday from 9:00 a.m. to 6:00 p.m., and it awarded Scott visitation accordingly. Jamie and the children

subsequently moved to Guntersville. A little over a year after the divorce judgment was entered, Scott filed a petition to modify the visitation provisions of the divorce judgment because he had joined the United States Navy and was stationed in Washington state, making the visitation as outlined in the divorce judgment impracticable. The Marshall Circuit Court modified the visitation provision to, among other things, allow certain members of Scott's family to have access to the children during Scott's visitation periods in his stead; however, after considering a postjudgment motion filed by the mother, the Marshall Circuit Court amended the modification judgment to only allow their paternal grandfather to transport the children to visitations with Scott.

Scott appealed the amended modification judgment to this court, primarily arguing that the Marshall Circuit Court had erred in removing his right to delegate his visitation rights to his family members. A plurality of the court agreed and reversed the judgment. The plurality opinion proceeds from the concept that parents have a fundamental right to control their children's companions and associations. A noncustodial parent does not forfeit that right by divorcing the custodial parent and

joining the armed forces. When a court awards reasonable rights of visitation to a fit noncustodial parent, that award ordinarily carries with it the right of the noncustodial parent to decide who may visit with the child during his or her visitation periods, a decision that may not be vetoed by the custodial parent.

As noted, McQuinn is a plurality opinion. Judge Crawley and Judge Pittman concurred in the main opinion, Presiding Judge Yates, Judge Thompson, and Judge Murdock concurred only in the result as to the discussion regarding visitation. Plurality opinions have questionable precedential value at best. Ex parte Discount Foods, Inc., 789 So. 2d 842, 845 (Ala. 2001). Thus, McQuinn should not be read as establishing any rigid rule of law holding that a noncustodial parent may delegate his or her visitation rights to family members regardless of the circumstances at issue. In the main opinion, the plurality said:

> "The present judgment, however, limits the father to utilizing the aid of only the paternal grandfather to transport the children during visitation. Such a restrictive limitation, based on the specific facts of this case, is an abuse of the [Marshall Circuit C]ourt's discretion because of the father's employment and the considerable distances involved, both between the father's home and the children's home and

10

> between the other family members' homes and the father's and the children's homes."

McQuinn, 866 So. 2d at 574 (emphasis added). The plurality carefully worded its opinion in McQuinn to explain that the terms of the judgment restricting the father's parental rights were an abuse of discretion based on the specific facts of that case.

Based on the circumstances of this case, we conclude that the trial court abused its discretion in allowing the father to delegate his visitation rights to the paternal grandparents. As we have already discussed, the evidence shows that the father does not intend to visit with the child until at least April 2025, after his release from prison; instead, the father intends for the parental grandparents to exclusively exercise any visitation rights to which he is entitled while he remains incarcerated. The visitation provision, in effect, grants the father and the paternal grandparents the visitation rights that they requested in their testimony at trial.

In In re Huff, 158 N.H. 414, 969 A.2d 428 (2009), the New Hampshire Supreme Court considered whether a trial court could authorize an incarcerated parent to delegate part of his visitation time to

his girlfriend and a third party. Lawrence Huff divorced Jamie Huff, and, in a pendente lite order, he was allocated every-other-weekend visitation with their child. Lawrence was subsequently incarcerated for three to six years in a state penitentiary that allowed visitation only from 8:30 a.m. to 11:00 a.m. each Saturday. In the final divorce judgment, the New Hampshire trial court nevertheless awarded Lawrence visitation with his child a full weekend each month, authorizing Lawrence to delegate the remainder of his visitation to his girlfriend and to a friend in order to facilitate visitation between the child and his half siblings, who resided with the girlfriend. The New Hampshire Supreme Court reversed the judgment, reasoning that, "[w]here both parents are fit, the trial court may only award the incarcerated parent that visitation time which he can actually exercise." 158 N.H. at 419, 969 A.2d at 432. The court concluded that "[t]ime allocated to the [incarcerated parent] beyond that [to which he or she can actually exercise], which is then delegated to a third party, is equivalent to awarding an unrelated third party visitation rights." 158 N.H. at 420, 969 A.2d at 433.

12

In this case, the record is devoid of any evidence indicating that the father can exercise his visitation rights on "the 3rd Saturday of each month from 9:00 a.m. until 6:00 p.m.," and the evidence is clear that he is unwilling to exercise that court-ordered visitation even if he could. For the purposes of this opinion, we see no substantive distinction between an incarcerated parent who is unable to visit with a child and an incarcerated parent who is unwilling to visit with a child. In either case, the visitation will not be exercised by the noncustodial parent due to his or her current circumstances, so any visitation award that includes a right to delegation necessarily inures to the benefit of third parties.

We conclude that this case is analogous to In re Huff, which we find to be well reasoned and persuasive. Under the specific facts of this case, the visitation provision allowing the father to delegate his visitation is the equivalent of awarding the paternal grandparents visitation rights. Unlike in McQuinn, in this case, the original award of visitation specifically contemplates that the paternal grandparents shall be the only parties exercising visitation because, as the evidence indicates, the father will automatically delegate all visitation rights to them while he

13

is incarcerated. As the mother correctly argues, the judgment indirectly awards the paternal grandparents visitation with the child without meeting the notice, evidentiary, and other standards set forth in the GVA. <u>See</u> Ala. Code 1975, § 30-3-4.2(c), (d), (e), (l), and (m). <u>McQuinn</u> did not envision a visitation provision like the one at issue in this case, which does, in fact, run afoul of the GVA. We must therefore reverse the judgment in this case.

Finally, we recognize that the visitation provision was generally favorable to the paternal grandparents because it awarded the paternal grandparents the visitation that they had sought via the delegation provision. However, the judgment was unfavorable to the paternal grandparents to the extent that it denied their independent claim for visitation. The paternal grandparents could have filed a cross-appeal challenging the denial of their independent claim for grandparent visitation, but they did not. As a result, the denial of that claim has become the law of the case. <u>See</u> <u>Stocks v. Stocks</u>, 49 So. 3d 1220, 1236 n.4 (Ala. Civ. App. 2010) (Moore, J., concurring in part and dissenting in part) ("The custodians did not file a cross-appeal as to [the trial court's]

finding, so it is now the law of the case that the mother did not voluntarily forfeit her rights to custody of the children."); see also Norandal U.S.A., Inc. v. Graben, 18 So. 3d 405, 410 (Ala. Civ. App. 2009) (explaining that failure to file cross-appeal made unchallenged portions of judgment the law of the case); accord Segers v. Segers, 675 So. 2d 459, 460 (Ala. Civ. App. 1996). Because the denial of their GVA claim is now the law of the case, the paternal grandparents are not entitled to visitation with the child through any theory that they had proven their case under the GVA.

## Conclusion

Based on the foregoing, we conclude that the visitation provision implemented by the trial court was improper. We therefore reverse the judgment insofar as it awards the father visitation with the child and allows him to delegate his visitation to the paternal grandparents. See Raybon v. Hall, 17 So. 3d 673, 676 (Ala. Civ. App. 2009) ("'The reversal of a judgment, or a part thereof, wholly annuls it, or the part of it, as if it never existed.'" (quoting Shirley v. Shirley, 361 So. 2d 590, 591 (Ala. Civ. App. 1978)). We remand the case with instructions for the trial court to enter an order denying the father and the paternal grandparents

visitation with the child. Because the paternal grandparents did not file a cross-appeal, the trial court may not, on remand, reconsider the denial of their independent claim for grandparent visitation. Although our disposition precludes the father and the paternal grandparents from currently visiting with the child, and does not allow the trial court to amend its judgment to allow the father and the paternal grandparents to visit with the child, nothing in this opinion shall be interpreted as preventing the father or the paternal grandparents from petitioning the trial court to modify the no-visitation order if the material circumstances change and the paternal grandparents otherwise comply with the GVA.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Fridy, and Lewis, JJ., concur.

Hanson, J., dissents, without opinion.